Judge Wii.iisams.
The people in tins country do riot take for truth, eveiy thing that is published in a newspaper. The jury w 111 know they are to beguverned only by the evidence and the law. I trust no one will be so much prejudiced against, the prisoner, as to be led to at* unjust condemnation. It will be the duty and the business of the conn, to see that be has every advantage the law allows him. it is not to be apprehended that a jury of tisis coun'ry will do him wrong — their humanity is proverbial. Judge Haywood. — Í disapprove highly of tin-publication —the cause, however, is in course for trial, anti must come on. The clerk began to call over the jurots, after informing the prisoner these were the men who were to pass upon Ills trial, and that he must challenge tln-m if he thought proper, as the} came to the book to be sworn. Mr Hay said the killing of Daves by the prisoner, liad been a subject of very genera! conversation $ that the *496 fac(; |)af] been related in a newspaper under aggravating-circumstances, and though that publication might not hove been made with a view of pre-ocoupying the mind of any one who was to take a part in the trial,.yet in reality, it. may have had the effect of prejudicing the public mind in general against the prisoner-: that he had but too much reason to apprehend it had produced such effects : he therefore moved when the prisoner objected to a juror propter effectual, or for favor, as if is called, that the juror might he examined upon oath whether he had expressed an opiniorfuufavorable to fhrpr-isoner-,asother-wise it would be difficult for him to produce any satisfactory proof of the fact, having been confined and visifed only by one friend, and not knowing until the moment the juror- is offered, whether or not that person would be upon the panel. Great part of the jurors, being talesmen, summoned this morning since the. sitting of the court, had he ever heard of any man having expressed an unfavorable opinion, not knowing he would be summoned as a talesman, it is not to he expected the prisoner could he prepared to prove his exception, however true it might be, unless if could be supposed he. had prepared himself to support his exception against every man u h.. had given.such opinion, and that would be unreasonable. Mr. Jones opposed the motion, saying there was no preced>-nt for such a procedure, attd he hoped the court would not now make one for the first lime in favor of this prisoner, who should be tried as all other prisoners have been.
Judge. Haywood-
Í do not at pres* nt recollect, e.ver to have seen such a practice, and I am induced to think there is n« precedent of this kind. Judge Wíliiams — ■ there is none.
Mr. Taylor then cited 3 Bl. Com. 363. A person about to he sworn as a juror, may he challenged for any of the-causes there stated ; or even where the challenger liath no principal cause of challenge, but only some cause of suspicion, the validity of which must be left to triers. He also, ctt d 3 Bl. Com. 364, where it is laid down from Co. Litt 158 Bl. that a juror may himself be examined on Oít 11 of voire dire, with regard to s-ich causes of ehal-Ienge, as ate not 10 his dishonor or discredit. He also cited 4 Bl. Com. 352, where it is said, the prisoner may have the -ame thabrng -s for cause, its a criminal, as the Plaintiff •». ,Defend • t<t tn-ij in a civil case, and where a challenge propter affectum} is mentioned as one of them. He *497 argued, that (he expressing an opinion by the person offered as a juror, if not a principal cause of challenge, as he thooghi ii was, at least is sue.*» a cause, as might reasonably induce a suspicion of his not being indifferent and. impartial towards the prisoner ; and if a prisoner in a criminal case bad a right to except to a juror, suspecting him to be unfavorable, there must be some mode of trying and discovering the. truth of the exception, and there was no reason in a criminal case for resorting to a different mode of trial from that used in a civil one; and if on a civil ease, for the purpose of reaching the disposition of the juror towards the party, the law would suffer a juror to be interrogated on his oath, with respect to the truth of the cause alleged, to shew him not impartial, it is equally necessary that a prisoner, where life, is in danger, and for -whom the law professes so much tenderness, should be also entitled to have his exception tried in the same way, and to the same means of investigating it. One of those means is undoubtedly the oath of the juror himself; atid why shall not a prisoner have tin* oath of a juror, as well as a Plaintiff or 0 -fondant who has only some trifling property perhaps in question ? No inconvenience is brought upon the juror by the question to be asked, more than in a civil case: hr will not be required to give an answer to any question tending to criminate or defame himself. It is a very easy task for him to say whether he has delivered an opinion upon the ease of the prisoner or not. Is there any man here, who were lie in the situation of the prisoner, would not be- disconcerted to be tried by persons be suspected had already condemned him ? The motion of Mr. Hay cannot be an improper one, or the law cannot be. said to have that compassion and humanity for prisoners, which it so much boasts of. It is of very little consequence, wjn-ther or not the practice of our courts, hath been known to conform to what is now asked for by the prisoner; few cases perhaps have been known to require the same caution, and for that reason, it may not have been taken. The question is, does the law allow the prisoner such an objection, or such a means of discovering its truth or falsehood ? I- think it does allow of both, and must insist on them for the prisoner.
Judge Haywood. — Upon reflection, I am of opinion the motion is proper, and the persou off-red may legally ■ be interrogated on oath, as to any unfavorable opinion *498 he has expressed against the prisoner. I can see no rea-why Use exception is riot allowable as well in a criminal as in a cid case, nor why the juror should be sworn in a civil case and not in a crimina! one. li is rather more necessary in the latter, as it is of more importance to the prisoner concerned to have a good opinion of his jury. If a prisoner is at all entitled to the privilege contended for, it is as necessary to allow it in the case before ns as in any other. There is reason to suspect that the publication just spoken of, may have liad some influence upon the public mind, unfavorable to the prisoner. The homicide vviih which he is charged, has taken place in this town but a few days past. It is to be feared some ferments are caused by it, rendering it proper for the court to be circumspect and careful that the prisoner be not prejudiced by the violence of the cm rent opinion. "We shook! act as counsel for the prisoner so far as to see that he has a fair trial, and i bat he is not denied the benefits the law has provided for his defence against injustice.
Judge Wiumams. — I cannot think the prisoner is entitled to-interrogate a juror on oath as asked for. This man should be tried as all others have been. Why should we, extend privileges to him, that were not granted to the man tried yesterday for murder ? That man’s life was as dear to the public yesterday, as this man’s is to-day,- and we allowed no such privilege to him. I have never known such a thing even asked for before in any criminal case. The office- of a Judge is indeed a very arduous one —1 feel sensibly how disagreeable it is to sit upon a trial when the life of a fellow citizen is in jeopardy ; but when we once undertake it, we should discharge it faithfully, regardless of those sympathising feelings for the prisoner,, which are so apt to be experienced on such occasions.— We are riot to be influenced in any respect by them. It is not a true position that we are to be the friends of the prisom r — we are to see that he has a fair trial, ami this is all that 5s required of us.
Judge Haywood — I am intrusted in some measure by my country with Uiis man’s life — he may be a bad man and deserve death ; hut I will imt prejudge him, iieituer will i for any earthly cause b - prevailei upon to deny him any privilege he is entitled to. 1 think upon <on-sideration he is entitled to that which his counsel ask for *499 him ; and were the whole world here present to demand his execution, 1 would not refuse him .in ad van*age that should be conceded to lum; vv hilst I sit here,, the public cry shall never seduce or impel me into the adoption of a mensure my judgment, disapproves.
•Mr. Hay — in order to get over the embarrassment this motion is likely to produce, and the warmth it has given occasion ¡o, Í propose, that where a juror is challenged propter affectum, or for having expressed his opinion, his name shall be set down and noted as one, challenged for cause, and that the clerk then proceed with the panel; and if the panel shall he gone through, and the jury not completed, that then, we consider of th'- jurors wuose names are noted, and how the exception shall be tried_ Per.taps we may get a jury before the panel is gone, thro’ and then it will not be necessary to consider further of the exceptions.
Judge Wishams — That proposal is a proper one — I think it should be adopted. Judge Haywood assented.
The, Jurors in the panel were then offered to the (iris-oner, and a jury was completed ; and they were sworn arid charged with the prisoner.
The evidence on the trial was as follows : On Saturday night, Norris and Young came to the house of Mrs. Ramsay, wicre w*-re Daves, Dudley, Ramsay. Campbell and others. Young remained in the pi zz-i, Norri come in and sat talking with Ramsay for some time. Campbell went into the piazza to Young who was iiitoxic',vd. He talked of Daves. saying he- m’ide' siomi Daves liad s ad he could whip Norris, and desired Campbell to tell him to come out. Shortly after this. Norris tame out. They moved towards the door; Campbell went in leaving Young and Norris in the piazza, and told Daves to come out.— Daves and Dudley pulled off their clothes and went into the oiazz i, Young and Norris bad gone off, Dudley and Daves went into the street, and Norris came walking from the upper part of the town.’ down towards Ins own house, passing that of JUrs. Ramsay. Daves and Dudley went towards him and met him. and Dudley said to him, you came here to breed a quarrel. Norms answered he had oof. Daves replied, you did. Norris answered, he did not. Haves said, you are a damned liar.- Norris replied, whoever says I came here to breed a riot, is a *500 damned liar. Sain Daves-, jo» are a (lammed liar, and ti*i{>(>•-(! up bis heels attd threw him on the ground. Norris rose ami stepned t «wards him. Daves struck him— Norris desire»! Campbell <o take notice oí that. Dudley s lid to Daves, he vviil make you pay for that, take sntis-faction. Daves sn-pped to him and gave him three or four blows, «ip m wh'di Norris ran off towards his own house. Daves a ■(! Dudley walked down the ntreut calling for Fvung, «ho met them with his coat off. They demanded I him if he meant fighting, and why he hail stripf ; he answered that he was not for fighting, and that he had si ripped to se«' fair play, hearing the attack upon Morris- At this rime, the witness heard JVbmssay, damn yon, you struck me, did you ? Comeen, lam now ready for you. Daves .-.aid, you have a stick or some weapon yon want to kill me with, and stepped towards him, and hye then cried out, l am stabbed The witness ran to the place wre> e he was, and he was stabbed on the left side oi die heliy, with a wound three or four inches in leogdi. Upon the cross-ex. initiation of the witness, he said Daves kicked at Norris after he fell in the first combat, near Mrs. Ramsuy’s ; and that Norris’s house was about fifty ,. a« <ls from the place where Daves was stubbed ; (hat he had gone some distance below Mrs. Ramsay’s tov arm Norris’s, before they met the second time; and that Norris was gone three or four minutes before he it Turne’' ; and that the fighting happened about an hour in the night. S'lii* was Campbell’s testimony.
The evidence of Young was, that lie met Norris at the race-ground on Saturday, and rebuked him foe quarrel-ling die night before with Daves. Norris answered, it is ail settled, w drank together at the path — it was occasioned by liquor. At night we came down by Mrs. Ramsay’s, he asked me to go in, but 1 declined : he desired in' in wait a lidio, for him — I wailed in the piazza —Campbell came into the piazza — I walked down the street, niitl got just below Mrs. Thompson’s, where 1 saw Mrs. Thompson standing; Dudley came, out hallowing for me, 1 ..ir-wered him and pull-d off my coat, he came up and caught me by the shoulder, and asked if I had come to ineed a riot — lo which I answered, 1 had not.— .Daves also came up, and immediately afterwards I heard liiin cry out. he was stabbed, and tnrningthat way I saw Norris itin off. 1 think ft was eighty yards from the place where Dudley and Daves came up to me, and where *501 Daves was stabbed, to Norris’s house. Dudley hallowed so loud for me, that I think lie might lone bee- heard to N-rris’s house. A physician who attended Daves, swore he died of the wounds lie received that night.
Dudley deposed, that on Friday, himself, Daves and Norris came together into town from the mce-ground— that they stopped by the way at a house in town, and were drinking together. A conversation arose about one McRae. Daves abused, and Norris spoke well 'of him. Some warm words passed. Daves pulled off his clothes, ami went down stairs, bidding Norris to follow. Norris remained where be was,.and Daves came in asking Norris why hr liad not followed him. Norris answ ered, that is not the way I mean to fight — I will burn powde>* '■ ith you. We all went home, and next morning E met JV*orris, who asked what had been she matter last night, saying he had come to see about it, and seeming to be uneasy at what had happened. He inquired for Daves, who about that time came up. They conversed together j. Daves said, it was your fault, but I don’t care — I never bear malice. Norris replied, if was not me hut rum ; let us go to Dick’s and drink something. I proponed they should meet at the races and drink together, which ¡hey agreed to. At the race-gr-.und he called to Da.ves and-myself to come and drink with him, and we did so.— After drinking together we parted. After dark, at Ramsay’s, Norris came in and sat down. We sat down to supper, and Norris was asked to sit down,, but declined and went out — Campbell was missing — hut-after supper came in — Daves asked him what Norris, came for 5 Campbell said, ne supposed to breed a riot.— Daves and .my self tM-n pulled oh'our cloaihs and went into the piazza. Norris and Young were not there.— Daves railed out for them, saying they were cowards — Norris came up, and Daves met him. 1 wen! off culling for Young, lie answered, I am here. Daves and Norris. had some words, and Daves tripptd him up. Norris rose and Daves struck him. Norris required Campbell to take notice, it was just at this time Í heard Young answer. Daves struck three or four more blows, and Norris ran off. We went to Yoitng and stood talking with aim, when Norris came up. Daves turned and went towurds-h m, saying, yon ha- r g t a «capon or a stick, which Noras denied. Mrs. Thompson railed oul, saying, Norris has a sword or gun, he will kill you — -do not gQ *502 to him. Daves however, and Morris met in the street opposite to-whero we were. As they not JVorris made a lunge. Daves n ied out, he lias stabbed me, and fell. Foung and myself went to him — his bowels were out — we earned him to Mrs. Bamsay’s, am1 in two hours he died. Af the last meet in/', i did not see Daves strike before the Stab. It was eighty or an hundred yards from Thomp-sow’s the place where the stab was gi\ en, to Morris’s house. It is about twenty yard', from Mrs. Ramsay’s, where the first combat was, to Thompson’s. When Morris returned, he came running, and immediately after he gave the stab, ran off. I followed him, but did not overtake him, and returned. When Morris came into the house at Mrs. Ramsay’s, Daves said tome, Mrs. Ramsay does not want Morris here, yon had better ask him to go out. I icplied. no — he will go presently.
Mrs. Thompson deposed as follows : that on Saturday nigh; she was sit'ing in ati out-house, and heard a great noise, and a woman’s voice, and saw Mrs. Ramsay in the street, and heard very heavy blows, arid Mrs. Ramsay saying, cousin Ramsay don’t strike too. Ju-.t at this time Foung came to her w here she was standing in the street; she asked who were making that noise, he answered that Dudley and Daves were beating Morris; re-ques’od her to take his coat, saying he could not stand that, alluding as she supposed, to the heavy blows that were heard. Immediately a man came running, Foung asked who he was ; he said, Morris: what is the matter, said Foung, don’t run, Morris replied, Í can’t sumd thiee or four men. Foung said, you must stand ; it is cowardly to run. I will stand by you. Dudley & Daves came running up, and Morr-s breaking tire hold Foung had on him, ran off. Foung stepped hack, saying to Daves and Dudley, stop. i They asked him whether Morris had come by, lie said yes — but what is the matter ?— They said, do you stop us ? do you want ro fight ? He answered no. Daves then came *<> where she was, and said Morris had abused Mrs. Ramsay unmercifully, and that he had resented it. At tisis lime Dudley and Foung were in the. street in high words, and Morris came hack running. Dudley and Foung stood some small distance from her and Daves. Morris stopt ovi the other side of the si n et and sf,,.,d a short time. Sue said to Daves, do not go to him •, perhaps he has a weapon. Daves replied, *503 damn him ; I am hot afraid of him, weapon orno weapon; and went round (heqthe.s from her, towards Norris; a>'d said to Norris, hare you a weapon ? he an*w<'<od no. H.t'e you a. riub ? he answered no. The., said Daves, do you think you can stand a man now ? If i can’i, said Norris, I hate a man that can, Norris then cried out, sta o <’ff Mr. Daves, or the vvors- is yours. She then hea-d two or t1 ree blows, and I‘aves cried out, I am stubbed. Norris retired a small distance and stood.— She saw trim no more afterwards, that night. When Norris returned, he did not advance upon Daves, hut or-de.-eo Daves, when he advanced, to stand ! ack. Two or three blows passed before the stab, and she think* from the manner of Daves's »dv ..tiring they were given by him ■ — fu went towards Noitís as if going to attack him.— She heard the blows that first passed near Mrs- Ramsay* s —they were veiy heavy.
Several other witnesses were sworn, but they related nothing material. Mr.’ Briggs said, on Saturday, the day preceding the night when Daves was stabbed, he told him heixpected lie would have to fight that night, but did not say whom. Mr. Dick, recited the quarrel between Daves and Norris on Friday ; at which time Dudley i- si • tn Daves, say what you please to him. if you can’t flog him, I can. An old lady swore Daves had obtained a judgment on a warrant against some man, and about three weeks In fore his death left it w itii her, telling her to keep it, and if any accident happened to him, and he should die. that she «light collect the money — and a day or two after his .death Dudley came for it. Another witness said, the day before yesterday Dudley w-s speaking, after coming from court of a trial for murder which had taken place that day, and of the acquittal of the prisoner, and s¡.id upon that occasion, I will bet an hundred pounds Norris w ill not be acquitted — if he should, the man who clear* Inm ought to be put in his place. Another witness said, there were broils between Norris and the family of Dudley, but none that he knew of between Dudley nd Norris.
Jones. ‘lie Solicitor General, then moved to have leave to introduce wiinesses to prove a variance, between what Mrs■ Thompson, one of the witnesses, had sworn in court and what she had related in several conversations to others. He admitted the rule in civil cases was, that the *504 party producing a witness, should not afterwards be per» milted to discredit tliat witness; but tite rule led never bee.n adopted as lie knew of in criminal rases. In civil cases, the party converses with the witness b-fore his introduction, and knows what he will swear ; and is generally acquainted with the character of the witness, and with the degree of credit be is entitled to. When he produces a witness to the ourt, it is an admission on Ids na t that the witness is mdible, as he claims a benefit from the testimony, it h- proper in such ca«es he should be bound-by his admission, hut the reason of that rule will not apply to crimin; I cases, where the prosecution is carried on by the officer of the public, not a: the instance of any particular prosecutor. Tliat public officer is a stranger to the persons he produces as witnesses — lie lias in general, no opportunity of knowing either any thing of the character of the wit ins'!, or of what ii is he will -wen', otherwise than as he collects tf from others in the course of conversation.
Hay and Taylor objected to the attempt, of the Solicitor-General to discredit his own witness — tney insisted the rule of not allowing this to be done in civil «ases, was equally upidirabie to criminal ones.

Per curiam

The rule is so in civil cases — let authorities he produied to show how it is in criminal ones.— The gentlemen on both sides searched for authoritim-, hut could find none. Judge V. iKliams — Í think the Solicitor should be allowed to discredit the witness, if she has varied from the relation site now gives. Were lie no! allowed to do tliis, a prisoner- and his friend, might tamper .with womhie-.s persons to swear for the prisoner, and secure them from any impeachment of their credibility, by procuring them *o relate in public, a story lending to establish the guilt -f lie- prisoner, and by tita» means cause them to be summoned by the public officer and introduced for the. Stair; and when sworn, to depose directly against what they had publicly related. Were not the Solicitor el low d io impeach such evidence, a wide door would be opened for ilie acquittal of the prisoner by false testimony — the s>* sst->ier would have nothing more to do, timo run .e his »itne/i-e- to lie introduced on the p.-n r of the Sint*- — tn.-y m gh' i.ieeefore pas.- for 1 ruth ary falsities they is.-tg f. think proper to utter. It is a very easy matter to procure them to be introduced for the State, as *505 the Solicitor-General, not being acquainted with the witnesses, would think it Ids duly to cu.n.'noo and introduce ail such persons as ho ms is formed could swear any thing against tin- prisoner. Judge Haywood — No light that can be = i:. o -* u on tisis oibj .vt should be excluded, riot* any means left untried io place (be lari in its (¡•tie point of view. The witness has sworn to some circumstances which me very material in the present case : and if untrue, (hey should he rectified, if sht- has related the fact ditFereniiy io other persons, ii is a good reamm for giving the less credit to her relation now.
The witnesses to discredit her testimony, were called. One of them reluíod the story she told a few d ,ys ago, in which several circumstances now mentioned by her were omitted. Two witnesses were called to so op irl her credit — they said sue u.rl t<»Id ihe story io tlnsr presence at different tintes exactly -u; ¡hetto v told it in coift.
This (dosed the evidence on both sides — ; summary of which stands thus : On Oaturday night, Norris & Young returning from the race-, Norris went to at Mrs. Ham-say’s, whilst Young waited f<c htm in tie- pi iztaa. In the house, Norris talked wi h Ramsay. sitting no tin* bed. and supper coiningon.be mired and went up.t he street — Young going' down, Dudley & Daves understanding from Campbell, they had come, there io quarrel, stripped, went out calling lbr them and saying they were cowards — Vhrris at this going down tin* street, passed ¡sear Mrs. Ramsay’s not far froto which they were. Daves accused hon of coming there to breed a riof — -Norris denied it. Daves in-si ¡ted upon it. and proceeded to abusive language, which Norris retorted and Daves repeated, tripping up his heels and kicking at him whilst, on the ground. Norris rising, Daves struck him, and Norris celled to Campbell io take notice. Dudley then ad' ised Daves to (tike sausHclion, and Daves struck Norris three or four blows. Nmis ran off towards his own house, distant from Thompson’s, whtch was twenty yards below Ramsay’s, fif.y, eigot.yor an hundred yauh — Daves and Dudley went down the street towards Thompson’s, where they found Young uyip-pi d. Dudley stood in the st "t, opposite Thompson’s, corueisittg with Y.ung. Daves also stood to the sir>ef,, near Thompson s, conversing with Mrs. Thompson. Norris. -Iter an ihspucc of tnree or four iomihcs, ¡eim >>ed running, and as Mrs. Thompson says, stopt in the street *506 opposite to them — as the other witness says, he ran up to Daves without stopping — Daves discovered him, and' went towards him. Mrs Thompson ami Dudley' say, Daves enquired whether he had a weapon, dub or sth k, winch Norris denied ami they met. Campbell says, Norris cried ‘out, come on, I am ready for you. Mrs. Thompson says, blows passed upon their meeting, which -.he be!tetes were given by Daves. Budleij says, he did not see Daves strike before the slab — Ihe other witnesses say no-hing of blows at this timé, immediately upon Hie last meeting, the deceased received-the mortal wound of wnich he died.
Jones, Soiicitor-Greneral — The crime of which the prisoner is indit ted, is that of murder Títere is no doubt hut that a homicide was committed by him, and 1 will not dwell upon such parts of the evidence as go to the proof of that- — the. counsel for the prisoner will not deny it— neither will they deny, but that this homicide is either murder or manslaughter. I shall endeavor to prove from authorities, 'hat a homicide committed under such circumstances, amounts io murder. The definition of murder is this — when a person of sound memory and discretion, unlawfully killeth any reasonable creature in being, and under the public protection, with malice aforethought, either express or implied. The, grand distinction between murder and manslaughter is, that, murder is accompanied witii (he circumstance of maiice aforethought and manslaughter not. It is this circumstance th it makes , a homicide amount to the, crime of murder : wncnever therefore, the question is, whether Hie homicide amounts to murder or not, the iirst thing to be enquired for is, was it done with malice aforethought. And as this circumstance, is so very material, it is proper, the jury should have a clear conception of its legal signification. The term, malice aforethought, is used in a legal and technical sense, and has not the meaning which in common acceptation is usually aliix-'d to 11 — .malevolence, grudg- or ill-will to a particular person : for homicide may amount to murder, though the slayer may never before have seen or heard of the person killed — ts if a man resolve to kill the first man lie meets, and goeth out and kills a man he never before, saw ; or if he discharge a gun amongst a multitude of people, none of wuom lie knowetu any thing of; or if he goes with an unruly horse used to kick? *507 amongst a multitude of people, and tin' horse kicks one with whom he had no previous acquaintance, so that he die ; or if intending to kill one man against whom lie had malice in the common sense of the word, and striking or shooting at him, he kill another without any design a-gainsf him, and with whom he had no previous quarrel, nor any ill-will against him — all these homicides are malicious, though in none of them had the slayer had any particular ill-will against the person killed. The true legal idea of malice, as applied to the case of killing, is, where the fact of killing is abended with such circumstances as shew the slayer to have a cruel and diabolical temper and disposition, abo\e what is ordinarily found amongst mankind, or a heart regardless of social duty,- and totally bent on mischief. Foster 225,257. It is the crm-lty of the action, and the malignity of heart the action discovers, to which the law attributes the crime of mm-der ; and which causes the killing to be considered as unfit to be reduced to any species of homicide inferior in denomination and punishment to that of murder. This cruelty and malignity of heart is discoverable from the action itself, and the causes that lead to it. If the cause that led to it be. such a conduct on the part of the person slain, as would in ordinary tempers have produced only a slight resentment, not rising so high as to aim at the life of the offender, but only to a punishment proportionable to the offence, and yet the person offended lias attacked and beaten the other, in such a manner or with such a weapon as shews an intent to kill, and not only to chastise; and in beating he has killed the other, the law will deem it murder: because the beating in a cruel or unusual manner. or with such a weapon, are circumstances attending the fact which shew the heart of the slayer to have been more than ordinarily cruel and regardless of another’s woe. Foster 259. The law deems it proper he should answer for all the consequences of his cruelty, to their utmost extent $ and that one who has behaved himself with so much obduracy and perverseness, should no longer be regardéd as entitled to that compassion which the frailties of human nature may justly claim. He has acted not from the frailty of his nature, but from the unfeeling ferocity of a savage heart j and this circumstance causes the law to impute to him the crime, of murder — a crime which seems worthy to be treated with no indulgence, but *508 with the highest species of severity. So if Á. inviie. E. to his house, win re A. has a woman who fives with him, and !5. end she disagree, and-B. abuse her, and A, ñe-que 1 ■ D. to desisi from ill-treating the woman, for (hat lie m bound to proteei bee; and B. shall continue Ids abuse ami A. request him either to desist from abusing her or to leave the house, and B. gets up and throws a bottle of wine at die. bead of A. and immediately draw his sword, and B. with ¡¡is -.word kill A, it is murder: for the words spok< n by A. were not improper, nor such as ordinarily would stir up a man, to whom such words on such an occasion were spoken, to seek the. life of the otheryet B. having thrown a bottle full of wine with great force at The head of A. and by that having discovered an intent to kill him, and immediately having followed his intend; d Silow with drawing bis sword, another indication of his seeking the life of A. upon so slight an occasion, are circumstances Unit slew a disposition in the slayer, regardless of social duty and fatally bent upon mischief — a heart excessively cruel and turned to inhuman revenge, and therefore it is murder. li’eelyvg 120. Whenever this excess of cruelty appears, this disposition of tin* mind to enormous revenge, seeking upon no extraordinary provocation for the life of a fellow man — the crime of homicide amounts to murder. Also the crime of murder may be inIV*i red from the circumstance of former grudges, in the. present vase, bet.ween Norris and tin* deceased j but, I am 'Willing not to insist upon this, because it was proved they were, reconciled* and drank together at the races for the purpose of settling their dispute. The authority of ¡ II. F. €. 19!, may be produced, and l suppose will be produced, where there lias been once a former fighting between the parties and a reconciliation, and a new failing out and lighting upon which death ensues, thatiísimü not in such ease be attributed to the old grudge. 1- will admit this to be law, as it is.not my dcrii e to press any thing against the prisoner but what the law of the country and tin* I'Mdenee warrants. Unhappily, there is no occasion for resorting to the preceding quarrel, to fix upon the prisoner the guilt of murder. JNu case of killing upon a provocation given, has ever been adjudged manslaughter, where the provocation was no greater than that which was given in the present case, and the killing itself was commuted with so much wiekednes*. Disputes and ñf filing in consequence of them, happen every day in the *509 s>;rests,and elsewhere, w ¡1! 'he law *a,', when one is worsted, fie may quit the affray, go home, provid< him-t If «ith a knitr. return and .plunge it into the body of his adversary, ami that in- shall he guilty <>f no more than manslaughter? Such a doctrine will deluge the country in blood. The life of every man who is drawn into a quarrel and contends with another, will be <» d.iug'T. What can be more < rud, more indicative of a in dignant heart, than this deed of she prisoner ? fie quarrels with another and is be.ten, a thing that happens every day, and that «ill happen so long as there are men ; for this lie quits the conflict, goes directly fo a deadly weapon, returns and kills his antagonist.. Would oMicr men ic general, in his situation, have, taken up the cruel purpose of seeking so deadly a revenge? I slunk they v,'.*«!«! not $ ami it seems to me the act can appear no otherwise thin ns the effect of a cruel disposition, not ofhiitinui v.e.koess deserving of our compassion : and if it be iheeffrc- of cruelty, it amounts to murder, fled lie not time in going 80- or an 100 yards and returning, whilst he was mod.tying the horrid deed, to admit one sentiment of bun unity — to reflect and he diverted IVom it ? For the. honor of hitman nature let if be said, there are hut few men in the woild, who in all this time, would not. *ave persuaded them-, selves to abandon the inhuman design — hut very fen who would not Stave been awakened and alarmed by the workings of so black a spirit within them, and hate shrunk from its suggestions. The heart that could so hu.g entertain the hideous fiend, must have been familiarized to its lessons — the cruelty of the act demonstrates it murder, and here is that cruelty in its most heightened colors. — . The eases in the books where homicide Is adjudged hut manslaughter, have gone upon the circumstance of sime great provocation given to the slayer — such as in its nature is calculated to excite the pa-sions to the highest degree of turbulence — not upon shat of anger or resentment conceived upon occasions of'frequent and ordinary occurrence. Reproachful « ords spoken fo flic slayer, how provoking soever, «ill not reduce tiie act to manslaughter ; because words do not generally, excite fo thm degree of fury which aims at tin* life of tin- speaker. 11‘eelyng 55.. The aiming at his life ts-erefore upon s ich a oral ion,, is a proof of that devilish spirit, regM-dlvs of social duty, which cares not for the evils inflicted upon others- *510 that perverseness of heart which the law punisheth. If two persons suddenly fall out and fight, and in the contest one kills the other, that is manslaughter : the blood is heated, the passions boil, rage dictates his conduct, and whilst the blows are passing, there is no leisure for reflection, nor time for reason to assume its empire. Keelyng 56. That is not like the case before us: here, the combatants were separated, and the fatal blow not given till three or four minutes afterwards ; not until the slayer had gone 80 or an 100 yards and returned, after arming himself with a deadly weapon. Or if a man be. provoked by a great indignity offered to him, as by pulling his nose, spitting in his face, or the like, and he kills immediately, the law will attribute the act to human frailty ; but in all these cases the provocation is of the highest, kind, and the killing sudden and instantaneous, before the slayer lias time to deliberate or even think upon the. act he is about to commit. Keelyng 135, 136. Leach 155. Any circumstance of deliberation accompanying (he fact of killing, though the falling out is sudden and the killing a short tinte after, will cause the slayer to fall under (he imputation of murder ; as where two persons suddenly fall out, and the one goes away, saying he will gel something and stick the other ; and half an hour afterwards returns, having a great coat on and a weapon concealed under it, and throws down a foil, thé play they were at before the quarrel began, and the deceased according to custom, takes up the foil and strikes the other, who draw's out his weapon and kills — it was adjudged murder : not because the space of half an hour had intervened, but because the conduct of the slayer evinced deliberation and a cruel purpose. Foster 13Z. In the present case, there are circumstances which shew deliberation, and a design concealed in the breast of the slayer. He was asked, whether he had a weapon? He said, no. Again — or a stick ? He answered, no. Why did he conceal this circumstance ? What other motive could he have, but to induce Daves to come upon him, that he might strike the fatal blow ? This is as weighty a circumstance towards ptoving reflection as any of those, or all of them together, mi ntioued in the case iast cited. As to the blows said by Mrs. Thompson, to have passed, immediately before- the stab, no stress is m he laid upon them, because if they actually did pass, Morris had come to that spot armed with *511 a deadly weapon, to *.ak< away the Ufe of tbe deceased, upon -a black and diabolical design, the true reuse of the fern» malice: and basing killed in pursuance of that, he is guilty of murder, although lie ss as stricken by the other before the mortal wound was given. Upon the most attentive consideration, I cannot but view this case as murder, and with the observations I have now made, Í submit tbe fate of this unhappy man to the decision of the. court and jury.
Mr. Hay, and then Mr. Taylor, answered the Solicitor, and commented upon the evidence at great length, and with much ingenuity, placing it in as favorable a ligidffor tbe prisoner as possible: but as the true state of facts is as above collected, it is useless to report their remarks upon them. They insisted that the law so far as related to a case circumstanced like the present, defines manslaughter to be — when the fact is done in the beat of nassion and resentment, excited npon violent provocation given : and the killing need not be whilst both parties are combatting, as Mr. Jones seemed to intimate upon the authority of Keelyng 56. But if committed in so short a time after the irritation, as tliat the passions have not bad time to subside and cool, it is manslaughter only. And they cited Rowley’s case, Cro. Jac. 296, where two boys fought, one beat tbe other and drew blood from his nose, who ran three quarters of a mile to'his father, who came with a staff & struck the other boy \ hat he died, this was adjudged manslaughter only, owing to the heat of the passions at the time the blow was given. They also cited several cases from Com Dig. vol. 4, p. 258, to show that the killing with a deadly weapon (though the deceased were not fighting at the time) under the influence of violent anger, hath been adjudged manslaughter. They also cited 1 H. P. C. 82, and Foster 278. Strange 499. Keelyng 56, 135, 136, and Leach 155.
Judge Haywood. — The case before us is of awful itn-portance: every circumstance in it is worthy of attention and consideration : I am pleased at the solemn silence which hath prevailed during the progress of this trial. The offence of which the prisoner is indicted, is that.of the murder of Nathaniel Daves. If he is guilty upon die. e\ ¡deuce, w eighed by the law of the country, public justice requires lie should not be screened by any misplaced compassion ; and if upon the evidence he is not *512 gn¡if.y of tl¡e crime imputed In him, tto influence whatse-over should prevail t» hinder liifi acquittal. Whether he be. guilt} or not, dope (Ik opon the la»' and the fact : before we proceed to examine the fact, we should clearly comprehend what is meant by the term, murder. To-fix the attention only to such circumstances as are material to be considered n«w, it will be sufficient to say, it is a killing with malice prepense. The other parts of the definition have been fully giv-n in the Solicitor-General. Maine, prepense is a legal term that needs explanation. It does not signify ill-wisi or malevolence against an individual; it means, assume authors express it, a dispo ition to doe-, si : as others, the symptom of a wicked, depraved and corrupted heart : as others, the sign of a head regardless of social duty, and fat-lly bent upon mischief: by others, iris termed a circumstance attending the fact, that cuts off the slayer from all manner of excuse. All of them being only different modes of representing the same idea. I»yr this iat'er explanation is meant, that when the killing is without any justifying, excusing or alleviating circumstance, it is then murder. There are a great variety of such circumstances; for ins>anre, where, the killing is committed by an officer in executing the sentence of a proper tribunal ; the killing by such authority and for such a reason, is a circumstance that justifies the party. So also if ,*. man kill another who i« attempting to kill or rob him, or the "ike:, here the killing being with a design to prevent the perpetration of as gieat an evil attempted to he brought upon an innocent person, is a circumstance that justifies the deed. If a man doing a lawful act in a proper manner. nndraignedly kills another : here the killing being, done without any design to kill, and without any negligence in the party killing, is a circumstance, which excuses him. So if the party slaying hath been fighting with another, and declines the combat, and the other press him so hard that he is obliged to kill him to prevent his own destruction, or great bodily harm; this circumstance killing to avoid his own destruction, though originally culpable in fighting with the deceased at all, will excuse him from vim guilt of felony. And in ail other cases, where the circumstances attending tine fact, are such as will justify or excuse the ptuty, he is not guilty of murder : because the nmimstmoes are not such os leave him without excuse. Also, although the killing may not *513 íce attended with rirrumslaoccs of jas ti ir’at lots or excuse, yet it may be attended wish such rimiríi.üBMYS as wiil mitigate «is off mv, and ulF*>t*.» bita »*>;n»*ihittg to say by way ot excusing or, cxriTsptiwg himself íVos» the g’.iiit of. mus'iíer: as where vm¡e gro.u and * «.limi provoca. i«« bath been gi.en *o him by the p-rson kiln d, «mí he in the transport and fury of bis pas-don kiUetiv the other, the law in such cam* attributes ‘tic kill:.sg to the frailty ot human nature, op<-rM<’d «non by excessive anger, exeitod by tue unwortu* iroaiaient of the deceased j and both law and reason s.-.ys, that a killing under such circumstances, should ear be punished with the same severity as a killing without pi o vocation, or wuhouta voiy great one, and whe>, the mind cool and reflecting. The great distinction berwreu murder and man daughter is this, uianslaughici' is committed under the operation of luiious anger, tiuit mtspeuds for a tune the proper exercise of reason and reflection, and "’hir.ii hath been siimoi up by so»;:- great provocation ; for there are some provocations ¡ha; are. nos indulged with an allow-ai.ee of exciting die passions to such excess, and thus a ■disnoctmii is im-med between the íüífrrent degrees of prov.nnUou — if <t be by words or gestures only, if will a» l no sufficient to mitig as homicide into tnansiaughier j but if it be u proVi.coi r m by sum-- great indignity olf.-rcd to ihe party killing, as Ik spitting in his face or the like, or hy búlmg out ,w;i iighti-.g, so t;i,;i in cither case it may u'usou.ibiy be- pr Asumen -the blood is boated, and the passions raised to such a degree, -is >o suspend the proper operafi-oi of the re.zoning p-n\e«s, ihe exvrs is-* of judgment and r-Sertion, such prov.ca.i-'m will he * sufficient one to memi.tic the offence Into manslaughter. — 51 at ,;lf5:nrgh a sufficient provocation be given, anil the passions gn atly excited, yet if a .sufficient time isiicr- . venes for tin* pus-doiti* to subside a.ffi cool, and afu-r that t’i.- party prov-'ked, kill.-th >.<«' o’.her, the l.iw will d m it i.urder ¡ a*! having not bee"; u.t rífen of ungovernable pas-lion, a.<d from (he friihy of it,,man na'isrc, but. upou a principle of <cw ugs- ;ü r .(-asm; Ism. as- umed its proper 8i;> ion. Wnat is a sefli ient time for this purpose, hath never as 1 Uvi"!*.v of Iren preci.r-ly -ism'-.tin *d. It hath been d s an hour is more >'m srilicient time. it secies So dope »d g.v-.-..Sy upon l.-u* n.-vlkise oí the ¡u-ov0-c»tio?(, and mmst be left to ¡he jury to decido. 5? in the *514 cage ¡jef,,¡,fí them, they think sufficient time did intervene, .should find the prisoner guilty, though lie had heert greatly provoked before.: if otherwise they should find him not guilty of murder, but of manslaughter onlj.— Also, although the slayer hath been greatly provoked, and was agitated by resentment and anger in the highest degree, and hath not had a sufficient time for cooling before. the fatal stroke given, jef if in fact he appears to be possessed of deliberation and reflection, when or just before the time he gives the mortal blow, it will be murder. As where two men quarrel, and agree to fight, and the one observes to the other, he must first change his shoes, as they would render him less expert, with the sword; and they afterwards go out and fight, and he kills the other, it is murder ; because the remark he made shews deliberation and reflection. For always it is to he observed, that the law allows the offence to be extenuated only upon the ground, that the slayer has not the free and proper exercise of his rational faculties, owing (o the fury of resentment not unrt asonabiy conceived There are other distinctions between murder and manslaughter not necessary to be now taken notice of, as they have no relation to any such case as is framed by tlie evidence now before the court. It is most proper to state only such parts of the law, concerning homicide, as being compressed into a succinct compass, may serve to exhibit a clear view of the distinction between murder and manslaughter as far as regards this case. The next thing to be done, is to apply such parts of the evidence as are material, to the rules just laid down. The first thing that presents itself is, Norris’s going in Ramsay’s house. He dors not appear to have behaved illy there; from the whole of the evidence it does not appear he. went there with a design to quarrel: lie had retired before -Daves & Dudley stripped and went out. They hallooed for him and Young in the street, calling them cowards. Daves charged Norris, when met, with a design to raise a riot: he denied it again and again, till called a damned liar; when he retorted the lie conditionally ; Doves tripped up his heels, kicked at him on the ground, struck him vfrer he bad risen ; and upon Norris’s intimating an intention to resort to the law for-redress, repeated bis blows three or four times; when Norris ran off. Now the- question arises, was this a great provocation? would such treatment *515 excite the passions of man' in general to a degree excess? I'tliink it would. IfJVbms had killed Daves on the spot, I think it would have been but manslaughter. JVorris returned in three or four minutes, and gave the fatal stab. If he came up and nothing more passed before the stab, as the witnesses Campbell and Dudley .say there did not, then it is for the jury \.o consider, whether the three or four minutes intervening between the blows near Mrs. Ramsay’s, and the stab opposite Thompson’s, was sufficient tune for the passions to cool. If it was, the killing was murder. If it was not, ihe case falls under the same consideration as if the fatal stroke had been given when Daves first struck him. If the jury believe what was sworn by Mrs. Thompson, and which the other witnesses do not mention, that Daves when he advanced towards Morris after his return, struck him two or three blows before the .stab, they have a right to consider whether that was not a fresh provocation, sufficient to extenuate the homicide into manslaughter. If, however, the jury believe there, was not a sufficient time foi the passioné to subside, and that the blows mentioned by Mrs. Thompson, did not pass, yet the circumstances related by two witnesses of Morris’s, having twice denied his having a weapon or club, as it tends to evince deliberation and reflection, must be taken into their consideration ; and if they believe from this circumstance that he at that time had a reflecting capacity, and meant to conceal the weapon from Daves in order to draw him on, that he might kill him, then he is guilty of murder. It is proper, however to observe, that such a conclusion is in some sort negatived by Mrs. Thompson, who declares Morris, told him to stand off, or the worst-would be his. The jury will now take the law, the facts, and the circumstances this case, and by a careful comparison of the one with the other, they will draw a conclusion and say whether the prisoner is guilty of murder or manslaughter. I trust I have stated the law correctly.
Judge Wix.iiams. — 1 agree with Judge Haywood except in a few particulars : he says, malice is understood of a killing under such circumstances as cuts the party off from all manner of excuse. I do not think this a true position, he may have some kind of excuse, as a slight provocation or the like, or a provocation not sufficiently violent, he may ia short have some sort of excuse, and *516 yef ])0 guilty of murder. I cannot think it an excuse to r< duce tin- offence to manslaughter, where two persons quarrel and fight, and one goes some distance, gets a knife, returns and kills the other with it — such disputes happen every day. If vvehmy it is not murder to kill shortly after, under such circumstances as this man was killed, much blood will he spilt in a very short time — it will lie establishing a dreadful precedent. Norris ran oH- from the first combat and went home, he got into his house, his castle of refuge and defence, where no one would haw* offered to molest him — why did he not, remain there ? Why take his kuife and return back eighty or ail bundled yards toan enraged man ? Did not this shew a murderous intent, and that his heart was bent upon cruelty ? I think it is no matter what provocation the slayer may have- received from the other, if notwithstanding hat he appears to have possessed the faculty of reflecting. It is a temporary frenzy occasioned by passion, and depriving the- man for the time of his reason, that the law consid-.-rs and goes upon in estimating and reducing the. homicide to manslaughter; but there is not any evidence in this case of a deprivation of reason, but evidence of the contrary. H- denied having any weapon, when expressly asked whether he had or not ? The jury will consider way and for what purpose he made such :>n .mswer. if lie had any certain end in view, it is an evidence that his reason and judgment were not oveitmred. On occasions like the present, we are not to give up ourselves to the guidance of commiseration, \Y! ought inflexibly to do justice without regard to consequences. I am sure I have as much feeling and compassion for my fellow-creatures in distress, as any man; hut it is great cruelty to the public in a-Judge or juror, to acquit a murderer from motives of compassion. It encourages such offences, besides how is the prisoner dearer to us than the person slain, who may have left a wife and heb' h orphans to deplore his loss, deprived of their only í- a i¡d, and now exposed rmoforrjcss to the world. I ño r.ot know what was the ■■biatioo of the deceased, but his may be tie case with persons who tali by murderous hands, and their dependants. I meant not to pre-jiub'he case o(' tin* prisoner, but only to express my id* a of ihe impropriety diere is in .«h-wing favor. 'If the ps < by his ■ o-uhict has snhjerv ¡5 himself to the punishment of the laws of his country, we were not the cause *517 of bis transgression. If any mishap befa! him, it is his own fault, not ours — we should never attempt to trample upon the rules of law from motives of mercy or compassion.
The jury retired, and after some time returned, and found the prisoner not guilty of murder, but guilty of manslaughter | and he was burnt in the hand and discharged.
Note. — The cause of reporting this case with so much minuteness, is, that the public opinion ran very high against the prisoner, before and after his trial, and he was pronounced guilty of murder by many who were present at his trial. The jury who acqnitti d him, were highly censured. Perhaps the learned may be of opimon, when they meet with this case, that the jury gave a proper verdict. It is possible that may become the general opinion. If so, probably some of those who are to be her* after concerned in trials of tiiis sort, may be led to reflect on the rapidity with which a wrong opinion sometimes spreads its influence over the public mind, and to be cautioned, that a popular sentiment, however honest and well meaning U may be, may sometimes become current for want of sufflei* nt consideration or information, & as frequently so,respecting matters ofjudiriai deliberation as any others. That itmaybedestructiveofind'vidu *1 safety, andsh-.nid be watched and guarded against with the same firmness and circumspection as the influence of a King or his Ministers in a Monarchy, when attempting to interfere on such occasions. Should tin- reading of this case sufficiently impress the minds of any who may hereafter he called upon to decide on such occasions, with the propriety and usefulness of such a caution, something will be added to the stock of individual security, and of course to the public happiness, anil the labor bestowed upon this case be amply compensated. At any rate, tl'.e attributing improper motives to any who are from duty concerned in such trials, is of pernicious example. It has a tendency to distract the judgment by the terror of public censure, and to vender it less efficacious in perceiving fact s and circumstances in tlieirtrue light —the opinions of men may differ, and j et all be actuated by tile purest intentions.
Note. — In Cock's trial for treason, Salic. 153, the- court decided, a juror could not be asked on oath, whether lie bad expressed an opinion unfavorable to the prisoner ; because it was a misdemeanor to give such an opinion in a criminal case — but quiere, if that, be a good reason — Vide State Trials, vol. 4, p. 184, 185.
Note. — The acts of 1806, Rev. c. 698, s. 12 — 1808, Rev. c.745 — 1813 Rev. c. 853, provide fortheremov.il ofcauses to another county, where it is apprehended that a fair trial cannot be had in the first county. It is now the universal practice in this State, in capital cas* s, to ask each juror whether he h.»s formed and expresseu an opinion relative to the guilt or innocence of the prisoner, and if he has to set him aside. The decision relative to the State’a discrediting its own witness is not law. See Sawrey v Murrell & others, 2 Hay. 397. But the patty calling a witness, may disprot * try oilier witnesses, the fact which the first witness swore to. Bull. N. P. 297, Alexander v. Gibson, 2 Camp. N. P. Rep. 555.